UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN A.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br><br>        Defendant. | Case No. 19-cv-03893-EMC<br><br>**ORDER REMANDING PLAINTIFF'S SOCIAL SECURITY CLAIM FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Docket Nos. 24, 25 |

## I.  INTRODUCTION

Plaintiff Ruben A. seeks judicial review of the Commissioner's final decision denying his application for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act.  He moves for summary judgment or, in the alternative, remand for further administrative proceedings.  Defendant, the Commissioner of the Social Security Administration (SSA), cross-moves for summary judgment and for affirmation of the Commissioner's final decision.  The Commissioner further contends that remand for further consideration is the appropriate remedy if this Court does not affirm the denial.  Having considered the parties' briefs and the administrative record, the Court **REMANDS** for further proceedings.

## II.  BACKGROUND

Ruben A. applied for SSDI on August 1, 2014.  Docket No. 24 ("Mot.") at 2.  The SSA denied the claim initially and on reconsideration.  *Id.*  Ruben A. then testified before an administrative law judge (ALJ) on January 17, 2018.  *Id.*  A vocational expert (VE) also appeared and testified at this hearing.  *Id.*

The ALJ denied Ruben A.'s claim on May 15, 2018, finding he was not disabled.  *Id.* at 3.

1

Ruben A. requested review of the ALJ's decision by the Social Security Appeals Council, and the Appeals Council denied the request on May 2, 2019. *Id.* at 2. The ALJ's decision thus became the Commissioner's final decision subject to review by this Court. *Id.*

A.  Ruben A.'s Background

Ruben A. was 65 years old at the time of the ALJ's decision. AR 40, 153. His highest degree of education is elementary school. AR 41. He worked for thirty-seven years as a concert producer and in advertising and sales; he has not been able to work since 2015. AR 904. He alleges disability beginning August 1, 2014, AR 153, based on "a combination of impairments including lumbar, thoracic, and cervical degenerative disc disease and osteoarthritis of the wrists and hands." Mot. at 4.

B.  Medical Opinions

   1.  Dr. Bayne (Examining Physician)

Dr. Bayne examined Ruben A. on September 8, 2016. AR 904. In his diagnostic impression, Dr. Bayne observed that Ruben A. was experiencing: "[c]hronic recurrent neck strain/sprain," "[c]ervical degenerative disc disease," "[b]ilateral cervical radiculopathies," "[c]hronic recurrent back strain/sprain," "[l]umbar degenerative disc disease with spondylosis," and "[b]ilateral lumbar radiculopathy." AR 905. He concluded that Ruben A. should be able to drive or take public transit; "stand and walk with appropriate breaks for four hours during an eight-hour workday;" "sit with appropriate breaks for four hours during an eight-hour workday;" "lift and carry 10 pounds frequently and 20 pounds occasionally;" and "work in any work environment except on unprotected heights." *Id.* However, "[r]epetitive bending, twisting, crouching, crawling, stooping, kneeling, climbing up and down stairs, inclines, ramps or ladders should be limited to occasionally." *Id.*

   2.  Dr. Ikawa (State Agency Physician)

Dr. Ikawa, a non-examining state agency physician, reviewed Ruben A.'s medical records on April 22, 2016. AR 61. He noted that Ruben A. had various limitations, including: could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and walk with normal breaks for four hours; sit with normal breaks for six hours in an 8-hour day;

occasionally climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl; and had limited overhead reaching, gross manipulation, and fine manipulation in both hands. AR 62-63. He opined that Ruben A. was qualified for skilled, sedentary work. AR 64.

C.      Ruben A.'s Testimony

At his hearing, Ruben A. described his past work as a concert promoter. AR 34. He testified that he had to travel to concert venues—including flying to the destination, and driving to and from the venue upon arriving—to "make sure that [on] the date of show, the production was in place, sound and lights, et cetera, as well as security" and "collect the tickets." *Id.* He estimated that he spent forty percent of his job traveling, and seventy percent standing and walking. AR 34-35. With the onset of his disability, however, Ruben A. testified that he began to experience "pain . . . on [his] back, [his] neck, and [his] lower back" that affected his work. AR 35. As examples, Ruben A. remarked that he became "very uncomfortable and . . . had to be getting up constantly through the flight," "had to stop [driving] . . . maybe every 20 to 30 minutes because [he] had pain on [his] lower back and [his] legs," "c[ould] only sit for about 20 to 30 minutes," and had difficulty picking up his computer case. AR 35-37.

In terms of treatment, Ruben A. commented that he had received "[p]hysical therapy, and some procedures that are called epidural to block the nerves, and medicine to alleviate the pain." AR 37. However, while "[a]t first, . . . it was 30 days that [he] was able to perform almost normally, then it . . . wasn't effective anymore." *Id.* He reported that he and his doctors had yet to find an alternative that would effectively dissipate his pain. AR 37-38.

When asked about his daily activities, Ruben A. testified that he "participate[d] normally preparing the food"—but never the entire meal—for his younger daughter and son at home. AR 39. He noted, again, that he could only drive for about twenty to thirty minutes while conducting personal errands. *Id.* Additionally, in a March 2016 questionnaire, Ruben A. wrote that he ran errands for thirty minutes every day, tried to walk a mile every day (succeeding "maybe twice a week"), climbed stairs in the house two or three times a day (after which he had to lie down), and could carry a small bag of groceries and small bag of laundry two times per week around the house. AR 182-183. He also remarked that he did not do any other chores (*e.g.* yard work,

3

working on cars, cleaning the home, *etc.*). *Id.*

D.       The ALJ Decision Denying Ruben A.'s Social Security Disability Insurance Claim

The SSA uses a five-step sequential process to determine whether a claimant qualifies for disability benefits.  20 C.F.R. § 404.1520(a).  In steps one through four, the claimant bears the burden of proving his disability.  Only the ALJ's step four analyses are at issue in the present motion.  *See generally* Mot. at 7-15.

1.       Step 1: Substantial Gainful Activity

At Step 1, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b).  If an individual engages in substantial gainful activity, he is not disabled.  If he does not engage in substantial gainful activity, the ALJ proceeds to Step 2.

Here, the ALJ found that Ruben A. had not engaged in substantial gainful activity since August 1, 2014, his alleged onset date.  AR 17.

2.       Step 2: Severe Medical Impairments

At Step 2, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments which have lasted for at least twelve months.  20 C.F.R. § 416.920(c).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If he does, the ALJ proceeds to Step 3.

Here, the ALJ found that Ruben A. had the following severe impairments: neck pain, thoracic spondylosis, and chronic lower back pain.  AR 17.  The ALJ did not find that Ruben A.'s mental impairments were severe.  *Id.*

3.       Step 3: Severity of Medical Impairments

At Step 3, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or equal the criteria of a listed impairment.  20 C.F.R. § 416.920(d), 416.925, 416.926.  If so, then the claimant is disabled.  If not, then the ALJ proceeds to Step 4.

Here, the ALJ found that Ruben A. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

4

4. <u>Step 4: Determination of Residual Functional Capacity</u>

This is the only step relevant to this appeal. At Step 4, the ALJ must make two determinations. First, the ALJ must determine the claimant's residual functional capacity (RFC), or his ability to do physical and mental work activities on a sustained basis despite limitations related to his impairments. 20 C.F.R. § 416.920(e). Second, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). If the claimant has the RFC to perform his past relevant work, then he is not disabled. If the claimant lacks this ability, then the ALJ proceeds to Step 5.

Here, with regard to the first determination, the ALJ concluded that Ruben A. had the RFC "to do a less than full range of light work." AR 23. Specifically, the ALJ determined that Ruben A. could: "lift and/or carry ten pounds frequently, twenty pounds occasionally; . . . stand and/or walk for four hours out of an eight-hour workday; . . . sit for six hours out of an eight-hour workday; . . . occasionally bend, twist, crouch, crawl, stoop, kneel and climb; and . . . never . . . work around unprotected heights." AR 19. In making this finding, the ALJ purported to "give[] great weight to" Dr. Bayne's, Dr. Ikawa's, and other state agency physicians' medical opinions. AR 23. The ALJ agreed with the limitations described by Dr. Bayne, except she assessed that Ruben A. could sit for six hours in a workday rather than the four hours that Dr. Bayne reported. AR 19, 904.

The ALJ also "t[ook] into consideration the claimant's subjective complaints," AR 23, but did not credit all of Ruben A.'s testimony. AR 20. The decision asserted that the "objective medical findings," Ruben A.'s daily activities, and his "routine, conservative and non-emergency treatment" did not support Ruben A.'s "statements about the alleged intensity, persistence, and limiting effects of symptoms." AR 20-21. However, the ALJ did not specify which precise portions of Ruben A.'s testimony she was disregarding. *See generally* AR 20-23.

As to the second determination of Step 4 (*i.e.*, whether Ruben A. had the RFC to perform his past relevant work), the ALJ relied solely on the vocational expert's testimony. AR 24. At the hearing, the VE classified Ruben A.'s past relevant work as "booking manager," Dictionary of Occupational Titles (DOT) code 191.117-014, and stated the DOT classified this role as

"sedentary and skilled." AR 46-47. The VE later stated that the role was sedentary because "it's the type of position that, in reading the *Dictionary of Occupational Titles* description, would generally require a lot of work on the phone and at a desk because of all of the duties booking performers and doing all of the contacts." AR 50-51. Ruben A. took issue with this classification, pointing out that "his job just wasn't sedentary" and asking the VE for "a *DOT* title that's more consistent with the amount of travel that he had to do," but the VE stated that she could not identify any occupational classification that met Ruben A.'s request. AR 50.

The ALJ did not question this occupational classification, however, and instead posed the following "hypothetical individual" to the VE:

> This hypothetical individual has the same age, education, and work experience as our claimant. He is able to lift 20 pounds occasionally, 10 pounds frequently; stand and walk – stand and/or walk for about four hours in an eight-hour day, sit six hours in and [sic] eight-hour workday; push and pull is unlimited other than . . . [l]ifting and carrying 20 pounds occasionally, 10 pounds frequently. . . . Postural limitations are occasional ramps, stairs, climbing ladders, ropes, and scaffolds, and balancing. Stooping, kneeling, crouching, crawling occasionally. Manipulative limitations are as follows, limited left overhead and right overhead, handling, both limited. Gross manipulations, fingering, fine manipulations limited with both; feeling, unlimited.

AR 47-48. The ALJ then asked: "Can such an individual do the claimant's past work?" AR 48. The VE responded that these limitations "would allow for the past work as generally performed, not as actually performed." *Id.* Based on the VE's statements, the ALJ found that Ruben A.'s past relevant work was "booking manager, . . . sedentary, skilled," and concluded that Ruben A. "[wa]s able to perform this past relevant work as generally performed." AR 24. The ALJ thus found that Ruben A. was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.*

       5.      <u>Step 5: Ability to Perform Jobs in the National Economy</u>

At Step 5, the ALJ must determine whether the claimant is capable of doing any other work based on his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, then the claimant is not disabled; if not, then he is disabled. At this stage, the ALJ first consults the Medical-Vocational Guidelines, 20 C.F.R. Part 404, which provide a framework for determining

whether a claimant is disabled or not disabled based on his RFC, age, education, and work experience.

Because the ALJ concluded that Ruben A. had the RFC to perform his past relevant work, she did not reach Step 5 in her decision. *See generally* AR 24.

### III. MOTION FOR SUMMARY JUDGMENT

A. Legal Standard

A disability insurance benefits claimant may seek a district court's judicial review after the Commissioner has reached a final decision on the claim. *See* 42 U.S.C. §405(g). A district court may disturb this final decision "only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence." *Pineda v. Berryhill*, No. 18-cv-02901-EMC, 2019 U.S. Dist. LEXIS 551 (N.D. Cal. Jan. 2, 2019) (citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a scintilla, but less than a preponderance" of evidence that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Should the evidence support "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). The Court may reverse an ALJ's decision if it finds non-harmless error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). An ALJ's error is harmless if it is inconsequential to the ultimate non-disability finding. *Id.*

B. The Weight Given to Medical Opinions

At step four in her decision, the ALJ purported to give great weight to the opinions of both Dr. Bayne (Ruben A.'s treating physician) and Dr. Ikawa (the state agency physician) and ultimately concluded that Ruben A. had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)." AR 19, 23. Ruben A. contests this assertion, and argues that the ALJ improperly evaluated these medical opinions in her RFC assessment. Mot. at 8.

1. The Weight Given to Dr. Bayne's Opinion

Ruben A. argues the ALJ's determination that Ruben A. could "sit for six hours out of an eight-hour workday," AR 19, erroneously disregarded Dr. Bayne's September 8, 2016 physical examination report that Ruben A. "should be able to sit with appropriate breaks for *four* hours

7

during an eight-hour workday." AR 905 (emphasis added).

Per the Ninth Circuit, "[t]he opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (case citations omitted). Additionally, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). In particular, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." *Id.* (case citations omitted).

*Pitzer* is instructive. There, the Ninth Circuit found that a nonexamining doctor's contradicting opinion alone was insufficient to reject an examining physician's assertions in a Social Security case. *Pitzer v. Sullivan*, 908 F.2d 502, n. 4 (9th Cir. 1990). The ALJ's decision disregarded the claimant's examining physician's report. *Id.* at 506. The examining physician reported that the claimant's condition included pathological obesity limiting her hip and knee movement, chronic lower back pain, and bilateral knee pain; he concluded that the claimant met the requirements for a disability determination. *Id.* at 504. The ALJ, however, disregarded this opinion and found that the evidence "d[id] not establish a history of pain and limitation of motion in any weight bearing-joint [sic] or of the spine." *Id.* at 504-05. The sole evidence conflicting with this examining physician's opinion was the Oregon State Agency's non-examining physicians' statement that "the claimant had or regained the . . . capacity to perform substantial gainful work before the expiration of any period of 12 continuous months." *Id.* at n. 4. The Ninth Circuit found that "[t]he nonexamining physicians' conclusion, with nothing more, d[id] not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." *Id.* The Ninth Circuit thus concluded that the ALJ's disregard was erroneous. *Id.* at 506.

Here, as in *Pitzer*, the sole evidence the Commissioner provides to support the ALJ's disregard for Dr. Bayne's opinion is non-examining state agency physician Dr. Ikawa's assertion that Ruben A. could "[s]it (with normal breaks) for a total of: About 6 hours in an 8-hour

8

workday," which conflicts with Dr. Bayne's four-hour remark. AR 62; *see Pitzer*, 908 F.2d at n. 4. The ALJ does not provide the "specific and legitimate reasons" required by the Ninth Circuit, *Lester*, 81 F.3d at 830-31, to explain this rejection, and indeed does not even address this discrepancy. *See generally* AR 19-22. Like in *Pitzer*, then, the ALJ's failure to discuss Dr. Bayne's four-hour observation here was also erroneous. *See Pitzer*, 908 F.2d at 506.

The ALJ's erroneous decision to discount Dr. Bayne's medical opinion was not harmless. First, the ALJ's disregard of Dr. Bayne's four-hour limitation had a material impact on the VE's testimony—the sole basis for the ALJ's step four determination that Ruben A. was "able to perform [his] past relevant work as generally performed." AR 24. The Ninth Circuit has held that "[i]f an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony has no evidentiary value." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (quotations omitted); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out ***all*** the limitations and restrictions of the particular claimant."); *Brown v. Berryhill*, No. 16-cv-04022-EMC, 2017 U.S. Dist. LEXIS 164982, 27 (N.D. Cal. Oct. 4, 2017) ("The use of an incomplete hypothetical rendered the VE's opinion without evidentiary value."). In her questioning of the VE, the ALJ posed a hypothetical individual who could "sit six hours in and [sic] eight-hour workday." AR 47-48. She asked the VE if such an individual would be able to perform Ruben A.'s past relevant work, "booking manager . . . [which] [t]he DOT classifies . . . as ***sedentary*** and skilled." AR 24, 46, 48 (emphasis added). The VE responded that this hypothetical individual's conditions "would allow for the past work as generally performed, not as actually performed." AR 48. Dr. Bayne's opinion could thus feasibly have altered the VE's response since Ruben A. cannot meet sedentary work's usual requirement of six hours of sitting per day, *see* Social Security Ruling 96-9p, 1996 SSR LEXIS 6, and the booking manager position is classified as sedentary. Like in *Brown*, then, the Court "cannot 'confidently conclude' that the outcome would have been the same absent this error because the ALJ's determination was based on the VE's testimony, which in turn was based on the incomplete hypothetical." *See Brown*, 2017 U.S. Dist. LEXIS 164982 at 27-28 (quoting *Stout*, 454 F.3d at 1056).

The ALJ stopped at step four because of this past relevant work determination, so the Court similarly cannot opine on how Ruben A.'s case would have fared through step five of the evaluation process. Social Security Ruling (SSR) 96-9p provides some broad guidance: "sedentary work" would generally require sitting for "*about 6 hours* of an 8-hour workday," and "[i]f an individual is unable to sit for a *total of 6 hours* in an 8-hour work day, the unskilled sedentary occupational base will be eroded." Social Security Ruling 96-9p, 1996 SSR LEXIS 6 (emphasis added). Additionally, "[f]or the majority of individuals who are age 50 or older"—Ruben A. alleges disability beginning August 1, 2014, when he was 61 years old, AR 15—"and who are limited to the full range of sedentary work by their medical impairments, the rules and guidelines . . . require a conclusion of 'disabled.'" *Id.* Given this guidance and the fact that the ALJ's analysis did not reach this final fifth step, the Court cannot "confidently conclude" that the ALJ's decision would have been the same if she had properly credited Dr. Bayne's four-hour remark. *See Stout*, 454 F.3d at 1056.

### 2. The Weight Given to Dr. Ikawa's Opinion

Dr. Ikawa's report described "[l]imited" reaching for "[l]eft overhead" and "[r]ight overhead" directions and "[l]imited" gross manipulation and fingering/fine manipulation. AR 62-63. Dr. Ikawa further detailed that Ruben A. was limited to occasional bilateral overhead reaching and frequent bilateral handling and fingering activity. AR 63. In her hypothetical question to the VE, the ALJ described the individual as having the following "manipulative limitations:" "limited left overhead and right overhead, handling, both limited . . . [g]ross manipulations, fingering, fine manipulations limited with both." AR 48. In her RFC description, the ALJ omitted references to these manipulative limitations. AR 19. Ruben A. contends that the ALJ erred in failing to include these manipulative limitations in her hypothetical and in her RFC assessment. Mot. at 11-12.

The Court finds that the ALJ did not err in her manipulative limitation description to the VE. The ALJ did reference these manipulative limitations (*e.g.*, limited overhead handling and manipulations) in her hypothetical individual. AR 48.

The Court finds that the ALJ *did* err in omitting these limitations in her RFC. The ALJ's RFC named specific limitations pertaining to how frequently Ruben A. could lift, carry, stand

10

and/or walk, sit, bend, twist, crouch, crawl, stoop, kneel, and climb, but did not mention any manipulative limitations relating to reaching, fingering, or handling. AR 19. The Commissioner concedes the omission, but argues that this error was harmless since "the vocational expert . . . considered manipulative limitations when assessing the requirements of the claimant's past relevant work." Docket No. 25 ("Opp.") at 4. As discussed above, the VE's assessment was already flawed given Dr. Bayne's opinion, *see infra* Section III(B)(1), and the ALJ's step four past relevant work determination must be vacated. This manipulative limitation error thus does not change the outcome of this appeal. S*ee infra* Section III(B)(1).

Dr. Ikawa also opined that Ruben A. was limited to standing and walking for four hours out of an 8-hour workday. AR 62. The ALJ included this limitation in her RFC description, but Ruben A. argues that the decision "improperly classified an RFC allowing for only 4 hours of standing and walking per day as light rather than sedentary." Mot. at 11. The Court finds that the ALJ should have sought guidance on this classification from the VE; however, without further information, the Court cannot opine as to whether Ruben A.'s exertional abilities should be considered "light" or "sedentary." As this Court has observed, "sedentary work" is described in SSR 83-10 as "requiring that 'periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday.'" *Brown*, 2017 U.S. Dist. LEXIS 164982 at 42. "Light work," meanwhile, "requires 'frequent lifting or carrying,' which means 'standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" *Id.* Should a claimant's standing ability be in between two and six hours, as Ruben A.'s is, "the ALJ [i]s not obligated to automatically assign the lower category; rather, [s]he [i]s required to consult a VE to determine if jobs existed in the national economy that [the claimant] could perform." *Id.* at 43. The ALJ failed to ask this question of the VE. *See generally* AR 47-49.

This step 4 classification error did not affect the outcome of the ALJ's ultimate determination. This classification issue is would have been significant as to step five (which the ALJ did not reach here), when the ALJ would have consulted the Medical-Vocational Guidelines.

C. <u>Credence Given to Ruben A.'s Testimony</u>

In her decision, the ALJ found that Ruben A.'s testimony "about the alleged intensity,

11

persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence." AR 20.  The decision acknowledged Ruben A.'s claims that he suffered from "arthritis in the neck and back, bulging discs in the neck and back, chronic pain in the neck and back, . . . pain that radiates from lower back through both legs . . . [and] pain [that] goes down to his arms from [his] neck, which affects the use of his arms making it difficult to pick up his computer case." *Id.*  However, the ALJ observed that "[d]espite the alleged impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction," such as "us[ing] a computer, prepar[ing] meals, . . . driv[ing], . . . run[ning] errands, do[ing] laundry, and carr[ying] groceries." *Id.*  The ALJ also noted that Ruben A. had received physical therapy and epidurals for the pain but "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual." *Id.*  Ruben A. contests these findings, alleging that the ALJ "identifie[d] no specific records contrary to any of Ruben A.'s specific statements regarding his limitations," and that his testimony was indeed consistent with the objective medical opinions. Mot. at 13-15.  He further argues that his epidural and physical therapy treatments should not be classified as "routine and conservative treatment." Mot. at 14.

An ALJ must engage in a two-step analysis when determining whether a claimant's testimony is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035-36).  First, she must determine if the claimant has "presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.*  If the claimant meets this first step, "and there is no evidence of malingering," the ALJ then proceeds to the second step and "may reject the claimant's testimony regarding the severity of [his] symptoms only if [s]he makes specific findings stating clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  The Ninth Circuit has held that an ALJ does not meet this standard "by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, the ALJ must "specify which testimony she finds not credible, then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination;" otherwise, the ALJ will have "committed legal error . . . [that] [i]s not harmless because it precludes us from conducting a meaningful review of the ALJ's reasoning."[1] *Id.; see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

*Brown-Hunter* provides an analogous example. There, the Ninth Circuit found that the ALJ had erred when she discredited Brown-Hunter's testimony without providing specific reasons. *Brown-Hunter*, 806 F.3d at 489. The ALJ had concluded that Brown-Hunter's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not credible to the extent they [we]re inconsistent with the [ALJ's] residual functional capacity assessment." *Id.* at 491. The ALJ then "devot[ed] the next eight paragraphs to summarizing the medical evidence," after which she wrote that "the functional limitations resulting from the claimant's impairments were less serious than she has alleged." *Id.* The Ninth Circuit found the ALJ's "single general statement" insufficient since she "did not specifically identify any . . . inconsistencies," and "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Id.* at 494. The court therefore concluded that the ALJ had committed a non-harmless legal error that warranted a remand for further administrative proceedings. *Id.* at 495-96.

---

[1] The Commissioner contends that the Ninth Circuit's "clear and convincing reasons" standard, *see, e.g. Garrison*, 759 F.3d at 1014-15, is (1) "inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings," and (2) potentially invalid "given the agency's newly issued SSR 16-3p, which governs the ALJ's decision in this case." Opp. at n. 3. This Court is bound by Ninth Circuit precedent. Further, while SSR 16-3p does not reference a clear and convincing reasons standard, it still requires that adjudicators' decisions "contain specific reasons for the weight given to individual's symptoms, . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p. It also details that adjudicators "will explain which of an individual's symptoms [they] found consistent or inconsistent with the evidence in his or her record and how [their] evaluation of the individual's symptoms led to [their] conclusions." *Id.*

Like the *Brown-Hunter* ALJ, the ALJ here has provided insufficient reasons for dismissing Ruben A.'s testimony. Ruben A.'s ALJ also wrote a "single general statement" that Ruben A.'s "statements about the alleged intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence." AR 20. The decision *did* provide slightly more details than that of the *Brown-Hunter* ALJ—the ALJ pointed to (1) Ruben A.'s "somewhat normal level of daily activity" and (2) his "routine, conservative and non-emergency treatment since the alleged onset date" as evidence that Ruben A.'s testimony was not credible. AR 20-21; *see Brown-Hunter*, 806 F.3d at 491. However, neither of these meets the Ninth Circuit's demanding "clear and convincing reasons" standard. *See Smolen*, 80 F.3d at 1284.

First, the ALJ failed to specify how Ruben A.'s daily activities conflicted with particular aspects of Ruben A.'s testimony. AR 20. The decision also did not identify any specific objective medical evidence that conflicted with Ruben A.'s testimony regarding his pain and daily activities, and, again like the *Brown-Hunter* ALJ, the ALJ instead proceeded to spend the next several paragraphs summarizing the medical evidence. AR 20-23; *see Brown-Hunter*, 806 F.3d at 491.

The ALJ's medical treatment point also did not provide "clear and convincing" support for discrediting Ruben A.'s testimony. *See Smolen*, 80 F.3d at 1284. The decision observed that Ruben A. "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual." AR 20. Specifically, the decision characterized Ruben A.'s records as "reveal[ing] [he] received routine, conservative and non-emergency treatment since the alleged onset date." AR 21. This classification conflicts with Ninth Circuit precedent. The ALJ noted that Ruben A. "has had . . . epidurals for the pain," and *Garrison* explicitly stated that "we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *See Garrison*, 759 F.3d 995 at n. 20. Further, as the ALJ also acknowledged, Ruben A.'s past treatments "helped but are no longer effective," AR 20, so, as in *Garrison*, "there is no support in the record for the ALJ's belief that physical therapy and epidural shots alleviated [Ruben A.'s] pain enough that [his] testimony regarding pain was incredible." *See id.* at 1015. Additionally, as with her daily activities discussion, the ALJ failed to identify the specific portions of Ruben A.'s testimony that conflicted with her "routine, conservative" treatment characterization. AR 20.

14

For the foregoing reasons, the Court finds that the ALJ erred in disregarding Ruben A.'s testimony. This error was not harmless, since, as in *Brown-Hunter*, this obfuscation "precludes us from conducting a meaningful review of the ALJ's reasoning." *See Brown-Hunter*, 806 F.3d at 489. "[W]e cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *See id.* at 495.

D.  <u>Ruben A.'s Past Relevant Work Classification</u>

After determining Ruben A.'s RFC, the ALJ proceeded to conclude that Ruben A. was not disabled because he was "capable of performing past relevant work as a booking manager" as generally performed. AR 23-24. In his motion, Ruben A. contends that this finding was not supported by substantial evidence. Mot. at 7. The VE, Ruben A. argues, should have classified him as "Promotor," not "Booking Manager," because "Promotor" would "better capture[] the need for travel, setting up a venue, and dealing with people required in [Ruben A.'s] past work." *Id.* at 8.

At step four, the ALJ may find a claimant not disabled under the Social Security Act if he can perform his past relevant work either as actually performed ***or*** as generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001). "'[T]he best source for how a job is generally performed' is usually the Dictionary of Occupational Titles; and VE testimony can be considered in the step four analysis." *Doney v. Berryhill*, 728 F. App'x 687, 690 (9th Cir. 2018). When classifying past work, "the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion" and the ALJ cannot "classify an occupation 'according to the least demanding function.'" *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1086 (9th Cir. 2008).

The Ninth Circuit's *Carmickle* decision is instructive. There, Carmickle described his past job as requiring frequent lifting of 50 pounds or more and "[c]onstantly lifting or carrying something from a hammer to heavy beams or rolls of vinyl & carpet;" he asserted that his supervisory duties comprised 20 percent of his time. *Carmickle*, 533 F.3d at 1166. The VE conceded that this position as actually performed was "heavy-duty," but classified the position as DOT number 182.167-026, "Superintendent, Construction"—a light-duty role that was "purely

15

supervisory" and "require[d] no manual labor." *Id.* Given this categorization, the VE concluded that Carmickle could perform his past work as generally performed; the ALJ accepted this classification. *Id.* The Ninth Circuit held that the ALJ had classified Carmickle's occupation "according to the least demanding function" without "keep[ing] in mind that every occupation involves various tasks that may require differing levels of physical exertion," and held that the ALJ had committed legal error.[2] *Id.* (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985).

Here, the DOT defines the VE's "Booking Manager" (DOT number 191.117-014) classification as including generally sedentary activities—"book[ing] performers, . . . schedul[ing] attractions for season, . . . negotiat[ing] with booking representatives," *etc.* The DOT definition categorizes the role as "sedentary," and does not reference any significant traveling, driving, or standing requirements. AR 24, 47. In the VE's own words, this "Booking Manager" position generally involves "a lot of work on the phone and at a desk because of all of the duties booking performers and doing all of the contracts." AR 51.

This classification is at odds with Ruben A.'s testimony. At his hearing, Ruben A. described his job as a "promoter:" he would "make sure that the date of show, the production was in place, sound and lights, et cetera, as well as security;" "travel fly [sic] in from wherever I was to where the location was going to be;" and, after arriving at the destination, "drive back and forth to the venue." AR 34. He estimated that he spent 40 percent of his job traveling and 70 percent standing and walking. AR 34-35. While this position certainly could have entailed some sedentary time with "work on the phone and at a desk," the VE here, like the *Carmickle* VE, failed to recognize the significant additional physical exertion required of Ruben A. at his previous job. AR 51; *see Carmickle*, 533 F.3d at 1166. Since the VE has also classified Ruben A.'s occupation

---

[2] The Commissioner cites *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005), to argue that "based on the VE's documented vocational background," Ruben A.'s "lay opinion that the VE was wrong is not sufficient to overturn the ALJ's decision." Opp. at 5. It points specifically to *Bayliss*' proposition that "[a] VE's recognized expertise provides the necessary foundation for his or her testimony." *Id.* (quoting *Bayliss*, 427 F.3d at 1218). However, even if the VE's testimony has the "necessary foundation," this fact does not relieve the ALJ of the obligations laid out in *Carmickle*. *See Carmickle*, 533 F.3d at 1086.

16

"according to the least demanding function," the Court finds that the ALJ erred in accepting the VE's "Booking Manager" classification. *See Carmickle*, 533 F.3d at 1166.

E. <u>Award or Remand</u>

Ruben A. requests the Court reverse the ALJ's decision and remand for payment of benefits, or, in the alternative, remand for further administrative proceedings. Mot. at 16. The Commissioner asks the Court to affirm the ALJ's decision and contends that the alternative appropriate remedy would be to remand for further agency review. Opp. at 8.

The Ninth Circuit has stated that "when 'the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985)). Further proceedings are "generally useful" where "there is a need to resolve conflicts and ambiguities." *Id.* at 1101. "A remand for an immediate award of benefits is appropriate, however, only in 'rare circumstances.'" *Brown-Hunter*, 806 F.3d at 495. Per the Ninth Circuit, "we generally remand for an award of benefits only . . . 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" *Treichler*, 775 F.3d at 1100 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

Further administrative proceedings ***would*** serve a useful purpose here. The ALJ committed non-harmless legal error when she disregarded significant aspects of Dr. Bayne's and Dr. Ikawa's opinions; rejected unspecified portions of Ruben A.'s testimony; and accepted the VE's improper past relevant work classification. As discussed above, without further explanation of these "conflicts and ambiguities," *Treichler*, 775 F.3d at 1101, the Court cannot confidently opine on whether these errors would have altered the ALJ's decision. Because outstanding factual issues remain, the Court finds that a remand for further administrative proceedings is appropriate.

///

///

## IV.   CONCLUSION

For the foregoing reasons, the Court **REMANDS** to the Commissioner for further proceedings consistent with this opinion.

This order disposes of Docket Nos. 24 and 25.

**IT IS SO ORDERED**.

Dated: April 16, 2020

_____
EDWARD M. CHEN
United States District Judge